ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

2020 JAN -6  PM 3: 40

DEPUTY CLERK_____

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO.  3:19-CR-121-N |
| KARA LAMPKIN (04) | |

## FACTUAL RESUME

In support of Kara Lampkin's plea of guilty to the offense in Count One of the

Superseding Indictment, Kara Lampkin, the defendant; Daniel Gividen, the defendant's

attorney; and the United States of America (the government) stipulate and agree to the

following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Superseding Indictment,

charging a violation of 18 U.S.C. § 371, that is, conspiracy to use a facility of interstate

commerce in aid of a racketeering enterprise, the government must prove each of the

following elements beyond a reasonable doubt:[1]

> *First.*      That the defendant and at least one other person made an agreement to commit the crime of use of a facility of interstate commerce in aid of a racketeering enterprise, as charged in the Superseding Indictment;
>
> *Second.*      That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2015).

**Factual Resume—Page 1**

*Third.*    That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the Superseding Indictment, in order to accomplish some object or purpose of the conspiracy.

The elements of use of a facility of interstate commerce in aid of a racketeering enterprise, a violation of 18 U.S.C. § 1952(a)(3), are as follows:[2]

*First.*    That the defendant used a facility in interstate or foreign commerce;

*Second.*    That the defendant did so with the specific intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity; and

*Third.*    That subsequent to the use of a facility of interstate or foreign commerce, the defendant did knowingly and willfully promote, manage, establish, or carry on such unlawful activity.

## STIPULATED FACTS

1.    Kara Lampkin a/k/a Barbie a/k/a Kara Rodriguez, admits and agrees that beginning no later than December of 2014, and continuing to March 2018,* in the Dallas Division of the Northern District of Texas (NDTX) and elsewhere, the defendants, Long Vo, Christopher Wiese, Caitlyn Wiese, and Kara Lampkin, did knowingly and willfully conspire and agree together, and with other persons known and unknown, to commit the following offense against the United States: to use and cause to be used facilities in interstate commerce, namely cellular telephones, the internet, and federally-insured banks, among others, with the intent to promote, manage, establish, carry on, and

---

[2] Fifth Circuit Pattern Jury Instruction 2.74 (5th Cir. 2015).

*Lampkin was not a part of the conspiracy until mid to late 2016. *KL*

Factual Resume—Page 2

facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the laws of the State of Texas, and did thereafter perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of such unlawful activity, in violation of 18 U.S.C. § 1952(a)(3).

2.      Kara Lampkin admits that Jason Vo was the owner of Relax2013, and that Relax2013 catered to men looking for a "discrete" studio to engage in commercial sex with women.  Kara Lampkin worked at the direction of Vo while at Relax2013 and helped managed the day-to-day activities.  Specifically, Kara Lampkin posted online advertisements to recruit commercial sex workers, scheduled appointments, vetted customers to ensure they were not law enforcement, collected and retained large amounts of cash from the commercial sex enterprise, and made cash deposits into accounts under the control of Vo.

3.      Kara Lampkin further admits that she used online advertising platforms— which were facilities used in interstate commerce—to promote Relax2013 and recruit women to work as commercial sex workers at Relax2013.  These advertisements promised instant cash upwards of $1,000 per day and made vague references to the type of "work" that the women would perform at Relax2013.  It was a strategic choice by Vo, Wiese, Caitlyn Wiese, Kara Lampkin, and others, to make vague reference to the type of work performed by the women at Relax2013 to avoid raising law enforcement suspicion. Once the women responded to the advertisements, Vo, Wiese, Caitlyn Wiese, Kara

Lampkin, and others, required the prospect to email a picture of herself with the day's date written on her hand. Again, this done to ensure that they were not dealing with a law enforcement undercover.

4.     Vo, Wiese, Caitlyn Wiese, Kara Lampkin, and others met with the commercial sex workers to explain the expectation that commercial sex was performed for customers of Relax2013. It was a common understanding among the employees and independent contractors at Relax2013 that in order to obtain more customers and more money, the commercial sex workers needed to perform a variety of sexual acts and cater to a variety of customers' specific fetishes. Indeed, Vo, Wiese, Caitlyn Wiese, Kara Lampkin, and others reviewed on a daily basis the graphic reviews posted by Relax2013 customers.

5.     Kara Lampkin further admits that Relax2013 charged each commercial sex worker a "house fee" to use the rooms at Relax2013. The "house fee" ranged from $80 to $100 depending on how long the commercial sex session lasted. The "model"— another word for commercial sex worker—negotiated with the customer the price of the commercial sex act. Kara Lampkin received a percentage of the "house fee"—which was paid in cash—from the commercial sex activities at Relax2013. Jason Vo and Kara Lampkin concealed the illicit nature of the payments by claiming in various business documents that the payments were for "cleaning services."

6.     Kara Lampkin admits that she conspired with Vo, Christopher Wiese, Caitlyn Wiese, and others (over five individuals) to promote and manage Relax2013. Kara Lampkin further admits that Vo was the leader/organizer of the Relax2013

commercial sex enterprise, and that Christopher Wiese was the manager/supervisor of Relax2013.

7.     Kara Lampkin further agrees that she opened up her own brothel called Barbie's Boutique.

8.     Kara Lampkin further agrees that she committed all the essential elements of the offense.  This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case.  The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the Kara Lampkin's guilty plea to Count One of the Superseding Indictment.

AGREED TO AND STIPULATED on this 6th day of _____January_____, 2019.

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
KARA LAMPKIN
Defendant

_____
RYAN RAYBOULD
Assistant United States Attorney
Kansas State Bar No. 25429
1100 Commerce Street, Third Floor
Dallas, Texas, 75242
Tel: 214-659-8713
Email: ryan.raybould2@usdoj.gov

_____
DANIAL GIVIDEN
Attorney for Defendant

Factual Resume—Page 5